UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DYLAN KILLION, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:24-cv-00337-JPH-MJD |
| ) | |
| CHINTU PATEL, et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Undersigned on the Renewed Motion to Dismiss filed by the following "Moving Defendants": Jay Ravi Randal 2, LLC; Subin 5, LLC; S&S Gas Station CSGS, LLC; Subin 6, LLC; Subin 10, LLC; Subin 12, LLC; Subin 13, LLC; Subin 14, LLC; Subin 15, LLC; Subin 16, LLC; Subin 17, LLC; Subin 18, LLC; Subin 19, LLC; Subin 20, LLC; Subin 21, LLC; Subin 22, LLC; Subin 23, LLC; Subin 24, LLC; Subin 25, LLC; Subin 29, LLC; Subin 30, LLC; Subin 33, LLC; Subin 35, LLC; Subin 37, LLC; Subin 38, LLC; Subin 39, LLC; Subin 40, LLC; Subin 41, LLC; and Jay Ravi Randal 1, LLC (collectively referred to as the "Operating Entities"), SUBINKY, LLC, and JBMEnterprise, LLC, (collectively referred to as the "Managing Entities"), and Chintu Patel and Jigna Patel. [Dkt. 158.] On May 21, 2025, District Judge James Patrick Hanlon designated the Undersigned to issue a report and recommendation regarding the disposition of the motion pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 166.] For the reasons set forth below, the Undersigned **recommends** that Defendants' motion be **GRANTED IN PART** and **DENIED IN PART**.

## I. ALLEGATIONS IN THE THIRD AMENDED COMPLAINT

This case is brought as a putative collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and a putative class action under the Indiana Wage Payment Statute, Ind. Code § 22-2-5-1 *et seq.* The two named Plaintiffs, Dylan Killion and Angel Ray, allege in their Third Amended Complaint,[1] [Dkt. 132], that employees at 37 Subway restaurants ("the Restaurants") were not paid the overtime pay they were entitled to under the FLSA. Each of the Operating Entities is a limited liability company ("LLC") that operates one of the Restaurants. The remaining Restaurants are operated by an LLC that is a Defendant in this case but not a party to the instant motion: Subin 9, LLC; Subin 26, LLC; Subin 27, LLC; Subin 28, LLC; Subin 31, LLC; Subin 32, LLC; Subin 34, LLC; and Subin 36, LLC (collectively "the Non-Moving LLCs"). The two Managing Entities are LLCs that receive funds from and/or make payments to or on behalf of the Restaurants.

Defendant Chintu Patel is a member and the manager of each of the Operating Entities and each of the Non-Moving LLCs. He is also the owner of Defendant SUBINKY, LLC, which funds expenses for each of the Restaurants. Chintu Patel determines the policies that apply to the Restaurants, including the range of hourly rates the employees of the Restaurants are paid and the policies governing the employees' overtime pay. Chintu Patel and his staff manage the Restaurants from an office in Greenwood, Indiana. Chintu Patel also manages the vendor that is responsible for the payroll for reach of the Restaurants as well as the vendor that performs human resources functions for each of the Restaurants. All of the Restaurants have common

---

[1] The Moving Defendants deny the truth of many of the allegations set forth herein.

human resources, common purchasing, common maintenance, and other common staff managing and supporting operations.

Defendant Jigna Patel owns two of the Restaurants, both located in Kentucky, and also assists in managing each of the Restaurants along with several district managers. Jigna Patel is the sole member of Defendant JBM Enterprise, LLC, which collects a management fee and other funds from each Restaurant and funds expenses for each Restaurant. Defendant JBM Enterprise, LLC, also provides funds to Defendant SUBINKY, LLC.

Plaintiff Killion worked at three of the Restaurants in Bloomington, Indiana, for approximately one year beginning in January 2023. He alleges that his employers were Chintu Patel and the three Non-Moving LLCs that operated the restaurants at which he worked: Subin 26, LLC; Subin 28, LLC; and Subin 34, LLC. He further alleges that he was not paid overtime and was also not paid for the time he spent taking online Subway University classes.

Plaintiff Ray alleges that she was an employee of Chintu Patel and the following Non-Moving LLCs for an unspecified period of time: Subin 9, LLC; Subin 26, LLC; Subin 27, LLC; Subin 28, LLC; Subin 31, LLC; Subin 32, LLC; Subin 34, LLC; and Subin 36, LLC. She alleges that she was not paid overtime to which she was entitled.

## II. DISCUSSION

The Moving Defendants move to dismiss the claims against them for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Specifically, they argue that Plaintiffs lack standing to sue them because none of them were Plaintiffs' "employers" under the FLSA or the Indiana Wage Payment Statute. Because Plaintiffs' allegations relevant to the employer status of the Operating and Managing Entities differs from the allegations relating to the Patels, the Court will examine the standing issue with regard to those two groups separately.

3

### A. Standing as to the Operating and Managing Entities

The Moving Defendants raise a facial challenge as to Plaintiffs' standing to sue the Operating and Managing Entities. "A facial attack tests whether the allegations, taken as true, support an inference that the elements of standing exist." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). "[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly-Iqbal's* 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) (citations omitted).

The FLSA creates certain obligations of an "employer" to its "employee."

> Under the FLSA, and with certain exceptions not at issue here, the definitions of key relevant terms are both broad and circular:
>
> > "(d) 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee.
> >
> > ...
> >
> > (e)(1) ... the term 'employee' means any individual employed by an employer.
> >
> > ...
> >
> > (g) 'Employ' includes to suffer or permit to work."

*Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 664 (7th Cir. 2022) (quoting 29 U.S.C. § 203). "Under the FLSA, alleged employees' 'injuries are only traceable to, and redressable by, those who employed them.'" *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289 (7th Cir. 2016) (quoting *Roman v. Guapos III, Inc.*, 970 F.Supp.2d 407, 412 (D. Md. 2013)). Thus, a

4

plaintiff only has standing to assert a claim under the FLSA against a person or entity who is (or was) the plaintiff's employer under the statute. *Id.*

Plaintiffs do not assert that any of the Operating and Managing Entities satisfy the definition of employer under the FLSA on their own; Plaintiffs admittedly did not perform work for any of them directly. Instead, Plaintiffs argue that they have standing to sue the Operating and Managing Entities along with the other Defendants because all of the Defendants operate as "an integrated employer under the Single Employer Doctrine." [Dkt. 132 at 7.]

Under the single-employer doctrine, "'when two entities are sufficiently integrated, they will be treated as a single entity for certain purposes.'" *Cremation Soc'y of Illinois, Inc. v. Int'l Bhd. of Teamsters Loc. 727*, 869 F.3d 610, 616 (7th Cir. 2017) (quoting *Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wisconsin & Its Loc. 5*, 724 F.3d 939, 946 (7th Cir. 2013)). When the doctrine applies, "an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger 'single employer' entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer." *Neor v. Acacia Network, Inc.*, 2025 WL 958583, at *4 (S.D.N.Y. Mar. 31, 2025) (citations omitted).[2]

> To determine whether two nominally separate business entities are a single employer, one must examine four factors set out by the Supreme Court: (1) interrelation of operations, (2) common management, (3) centralized control of

---

[2] Defendants argue in their reply brief that even if the single employer doctrine applied, it would not be relevant to the standing issue. [Dkt. 178 at 2.] They are incorrect. As the language cited from *Neor* above indicates, if the doctrine applied, each of the Managing and Operating Entities would be considered Plaintiffs' employer for purposes of FLSA liability; therefore, Plaintiffs would have standing to sue each of them. Defendants' argument conflates the application of the judge-made single employer doctrine with the statutory enterprise coverage provision found in the FLSA. Whether the former applies to claims brought under the FLSA does not depend in any way on the existence of the latter.

> labor relations, and (4) common ownership. No one of these factors is conclusive; instead, the decisionmaker must weigh the totality of the circumstances. Ultimately, single employer status is characterized by the absence of an arm's length relationship found among unintegrated companies.

*Lippert Tile Co.*, 724 F.3d 939, 946-47 (7th Cir. 2013) (internal citations and quotation marks omitted).

The single-employer doctrine, also referred to as the "integrated enterprise" doctrine, is a "judicially created" doctrine that "originated in the area of labor relations." *Rogers v. Sugar Tree Prods., Inc.*, 7 F.3d 577, 582 (7th Cir. 1993), *abrogated by Papa v. Katy Indus., Inc.*, 166 F.3d 937 (7th Cir. 1999) (citing *Radio and Television Broadcast Technicians Local Union 1264 v. Broadcast Serv. of Mobile, Inc.,* 380 U.S. 255, 256 (1965)). Courts have since applied the doctrine in other contexts, including in FLSA cases. For example, in *Neor*, the court found that various corporate entities that operated "over 56 hotels turned shelters and assistance centers, 750 individual family units, and 4 buildings in New York" operated as a single integrated enterprise "for purposes of potential FLSA liability." *Neor*, 2025 WL 958583 at *4, 5. The court then proceeded to conditionally certify a collective class encompassing all of Defendants' locations in New York, although the named Plaintiffs worked at only a few of them.

As Plaintiffs recognize, the Seventh Circuit has not addressed the issue of whether the single-employer doctrine may be applied as Plaintiffs wish to apply it in this case. Plaintiffs rely heavily on *Bruske v. Capitol Watertown Sprechers, LLC*, in which the court surveyed the state of the law at the time and concluded that "[d]istrict courts in other circuits are divided on the applicability of the single employer doctrine to FLSA cases, although the weight of authority

6

favors its application." 2021 WL 7502269, at *4 (W.D. Wis. May 26, 2021) (collecting cases)[3]; *see also* Noer, 2025 WL 958583, at *4 (noting that district courts in the Second Circuit are divided on the issue). The Undersigned has reviewed the various district court cases that examine the issue and, frankly, does not find the reasoning of those reaching one result to be more compelling than those reaching the other.

Fortunately, however, there is Seventh Circuit precedent that provides useful guidance in determining how that court would consider the issue. In Rogers, 7 F.3d 577, 582, the court extended the single employer doctrine beyond "labor relations" and applied its four-factor test to determine whether a defendant met the twenty-employee threshold required to be subject to a claim under the Age Discrimination in Employment Act ("ADEA"). In so doing, the court cited *York v. Tennessee Crushed Stone Ass'n,* 684 F.2d 360, 362 (6th Cir. 1982), for the fact that the doctrine's "application has been extended to the definition of an employer subject to the ADEA under § 630(b)," but did not discuss why extending the scope of the doctrine was appropriate.

A few years later, in *Papa,* 166 F.3d 937, 939, the court did ask whether it was appropriate and decided it was not. The court began by examining "the purpose, so far as it can be discerned, of exempting tiny employers from the antidiscrimination laws." *Id.* at 940.

> The purpose is not to encourage or condone discrimination; and Congress must realize that the cumulative effect of discrimination by many small firms could be substantial. The purpose is to spare very small firms from the potentially crushing expense of mastering the intricacies of the antidiscrimination laws, establishing procedures to assure compliance, and defending against suits when efforts at

---

[3] The court in *Bruske* stated that no district court within the Seventh Circuit had considered the issue of whether the single employer doctrine "should extend to actions brought under the FLSA." 2021 WL 7502269 at *3. That statement was incorrect. The issue was addressed in *Heuberger v. Smith*, 2017 WL 3923271, at *1 (N.D. Ind. Sept. 7, 2017); that court, relying primarily on *Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 414 (D. Md. 2013), declined to apply the doctrine in the FLSA context.

7

> compliance fail. See *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1314 (2d Cir. 1995) (reviewing legislative history); *Miller v. Maxwell's International Inc.,* 991 F.2d 583, 587 (9th Cir. 1993). This purpose or policy is unaffected by whether the tiny firm is owned by a rich person or a poor one, or by individuals or another corporation. If a firm is too small to be able economically to cope with the antidiscrimination laws, the owner will not keep it afloat merely because he is rich; rich people aren't famous for wanting to throw good money after bad. So an approach actually hinted at in the EEOC's brief of treating *any* affiliated group of corporations as a single employer of all the employees of all the corporations in the group would lead as rapidly to the destruction of tiny firms as the approach obviously rejected by Congress of applying the antidiscrimination laws to every employer, no matter how few employees he has.

*Papa*, 166 F.3d at 940 (emphasis in original). The court noted:

> Where a focus on integration makes sense is in the original context of the four-factor test: the determination by the National Labor Relations Board of whether it has jurisdiction over an employer or, even more clearly, what the appropriate bargaining unit is. *See, e.g., Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965) (per curiam); *South Prairie Construction Co. v. Local No. 627,* 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976) (per curiam). If the work forces of two affiliated corporations are integrated, there is an argument for a single bargaining unit covering both of them, and also an argument that they should be combined for purposes of determining whether the effect on commerce is substantial enough to justify the Board in asserting jurisdiction. But there is no argument for making one affiliate liable for the other's independent decision to discriminate. Courts that have borrowed the four-factor test for use in the discrimination context have, perhaps, been insufficiently sensitive to the bearing of context on the proper formulation of rules of affiliate liability.

*Papa*, 166 F.3d at 942-43. That said, the court did not hold that affiliated corporations could never be aggregated for purposes of meeting the twenty-employee threshold under the ADEA (or meeting similar thresholds under other employment discrimination statutes). Rather, the court limited the circumstances in which such aggregation was appropriate to the following:

> (1) the enterprise has purposely divided itself into smaller corporations to dodge requirements imposed by the anti-discrimination laws; (2) a creditor of one corporation could, by piercing the corporate veil, sue its affiliate; or (3) the affiliate directed the discriminatory act or practice of which the plaintiff complains.

*Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 364 (7th Cir. 2016) (citing *Papa, 166 F.3d at 940-42*).

*Papa* only involved the application of the "tiny employer" exception to employment discrimination cases. However, its discussion is much broader than that context. The court noted that:

> [W]e cannot think of a good reason why the legal principles governing affiliate liability should vary from statute to statute, unless the statute, or the particular policy that animates the statute, ordains a particular test. (The exception is applicable to the National Labor Relations Act, as we shall see.) The basic principle of affiliate liability is that an affiliate forfeits its limited liability only if it *acts* to forfeit it—as by failing to comply with statutory conditions of corporate status, or misleading creditors of its affiliate, or configuring the corporate group to defeat statutory jurisdiction, or commanding the affiliate to violate the right of one of the affiliate's employees. The act requirement is emphasized in our decision in *Secon Serv. Sys., Inc. v. St. Joseph Bank & Tr. Co.*, [855 F.2d 406, 413-16 (7th Cir. 1988)] and in numerous other cases across the full range of American law. *See, e.g., In re Kaiser,* [791 F.2d 73, 75, 77 (7th Cir. 1986); *Steven v. Roscoe Turner Aeronautical Corp.*, 324 F.2d 157, 160 (7th Cir. 1963); *Lowendahl v. Baltimore & Ohio R.R.*, 247 A.D. 144, 287 N.Y.S. 62, 76 (App. Div. 1936); *cf.* Phillip I. Blumberg, *The Law of Corporate Groups: Substantive Law* § 6.02, p. 114 (1987).

*Papa,* 166 F.3d at 941-42. In a later case, the Seventh Circuit, citing this language, rejected the argument that *Papa*'s abrogation of the single-employer doctrine in employment discrimination cases was limited to the tiny-employer exception. *Worth v. Tyer*, 276 F.3d 249, 260 (7th Cir. 2001). "Rather," the court noted, it "stated [in *Papa*] that the principles governing affiliate liability should apply 'across the full range of American law' unless a particular statute provided an alternative test."). *Id.*

Given the principles expressed by the Seventh Circuit in *Papa* and reiterated in *Worth*, the Undersigned determines that the Seventh Circuit would not recognize the single employer doctrine in the FLSA context, but rather would apply the general

common law principles of affiliate liability, requiring one of the three conditions set forth in *Papa* to be present before finding that one entity may be liable for the actions of another entity.  The FLSA does not provide an alternative test, and even if *Worth* left room for applying the doctrine to further statutory policy, the policy reasons that would support making it easier for FLSA plaintiffs to pursue a collective action against affiliated entities are equally present in the employment discrimination context.  *Cf. Kasten v. Saint-Gobain Performance Plastics Corp.*, 570 F.3d 834, 840 (7th Cir. 2009), *vacated and remanded on other grounds,* 563 U.S. 1 (2011) (recognizing that the remedial nature of the FLSA "warrants an expansive interpretation of its provisions"), *with Graczyk v. United Steelworkers of Am.*, 763 F.2d 256, 262 (7th Cir. 1985) ("As a general matter, the ADEA may benefit from the presumptions associated with a 'remedial' statute.").

      Plaintiffs only have standing to sue their employers under the FLSA.  The only basis for treating the Operating Entities and the Managing Entities as Plaintiffs' employers found in the Third Amended Complaint (or Plaintiffs' brief in response to the instant motion) is that the single employer doctrine applies to this case.  Because the Undersigned finds that the single employer doctrine may not be applied in cases brought under the FLSA, the Undersigned **recommends** that the motion to dismiss for lack of subject matter jurisdiction be **GRANTED** as to those Defendants and that the FLSA claims against them be dismissed without prejudice.[4]  Further, Plaintiffs do not assert in

---

[4] The Moving Defendants argue that the dismissal should be with prejudice.  [Dkt. 178 at 14.]  That argument is utterly without merit.  A dismissal for lack of subject matter jurisdiction is **always** without prejudice.  *See, e.g., Morgan v. Fed. Bureau of Prisons*, 129 F.4th 1043, 1052

their response brief that the single employer doctrine is applicable to claims under the Indiana Wage Payment Statute; their discussion of the issue is limited to the FLSA claims.  See [Dkt. 175 at 20-23].  Accordingly, the Undersigned also **recommends** that the motion to dismiss for lack of subject matter jurisdiction be **GRANTED** as to the claims under the Indiana Wage Payment Statute against the Operating Entities and the Managing Entities and that those claims also be dismissed without prejudice.

### B.  Standing under the FLSA as to Chintu Patel and Jigna Patel

The Moving Defendants do not make a facial challenge to standing as to Plaintiffs' FLSA claims against Chintu Patel and Jigna Patel.  See [Dkt. 178 at 3-4] ("Neither Plaintiff plausibly alleges that any **organizational defendant**—other than those who issued their paychecks—bears responsibility for or has the ability to redress the FLSA harms that each Plaintiff allegedly incurred. . . .  Each Plaintiff's repeated failure to allege that *each* of the Operating Entities, SUBINKY, LLC, and JBMEnterprise, LLC was *each Plaintiff's* employer leaves them unable to survive those entities' facial standing challenge. ") (bold emphasis added)).  Thus, the Moving Defendants implicitly concede that, if the allegations in the Third Amended Complaint are taken as true, the Patels would be considered joint employers of each Plaintiff along with the LLC(s) that owned the restaurant(s) at which the Plaintiff worked.

Nonetheless, the Moving Defendants argue that the claims against the Patels must be dismissed for lack of subject matter jurisdiction because those claims cannot withstand what they

---

(7th Cir. 2025) ("The dismissal should have been without prejudice, however, because 'a dismissal with prejudice is a merits disposition,' and a court cannot enter judgment on the merits when it lacks subject-matter jurisdiction or sovereign immunity applies.") (quoting *Flynn v. FCA US LLC*, 39 F.4th 946, 954 (7th Cir. 2022) (additional citations omitted).

11

term a "factual challenge" to standing.  See [Dkt. 159 at 15-16] (asserting that Plaintiffs "have not acquired any evidence" that would support a finding that they were employed by either Chintu or Jigna Patel and that "the documentary and testimonial evidence in this case" demonstrates that Plaintiffs' allegations about the role of the Patels in the day-to-day management of any the Restaurants are untrue).  In contrast to a facial challenge to standing, a factual challenge concedes that standing has been sufficient pled, but asserts that "there is *in fact* no standing."  *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (emphasis in original) (citing *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)).  "In response to a factual challenge, the plaintiff can no longer rest on the allegations in the complaint but must adduce specific *evidence* to satisfy each of the elements necessary to establish his standing to sue.  *Id.* (emphasis in original).  Notwithstanding that general statement of law, the Undersigned finds that Seventh Circuit precedent compels the conclusion that Plaintiffs are not required to produce evidence at this stage of the litigation sufficient to prove the truth of their allegations with regard to the Patels' involvement in management and control of the restaurants at which Plaintiffs worked.

In *Malak v. Associated Physicians, Inc.*, 784 F.2d 277 (7th Cir. 1986), the plaintiff was a physician who was employed by a private corporation that contracted with a public hospital to provide physicians, including plaintiff, to staff the hospital's emergency department.  The plaintiff's employment was terminated and the hospital subsequently revoked his staff privileges.  The plaintiff asserted a claim pursuant to 42 U.S.C. § 1983 against both a "public group" of defendants—the hospital, its board of trustees, and the head nurse of its emergency room—and a "private group" of defendants—the private corporation that employed plaintiff and two of its officers.  A claim under § 1983 may only be brought for actions taken under color of state law,

and the private group of defendants were not state actors. However, "[a] private defendant acts 'under color of' state law for purposes of Section 1983 when he is a willful participant in joint action with the State or its agents." *Id.* at 281 (citation and quotation marks omitted). The plaintiff alleged that "the private group of defendants conspired with the public group of defendants to terminate him because he publicly criticized the emergency-room conditions at [the hospital]," an allegation which, if true, would subject the private group of defendants to liability under § 1983 if, as plaintiff alleged, the termination violated the Constitution.

Some of the defendants moved to dismiss the complaint for lack of subject matter jurisdiction, asserting that state action is a prerequisite to jurisdiction and plaintiff's termination did not involve any state action. The Seventh Circuit noted that "plaintiff's basis for jurisdiction with respect to these private defendants under 28 U.S.C. § 1331—state action via joint action with the public defendants—is also an element of plaintiff's federal cause of action under Section 1983." *Id.* at 279. In such a situation,[5] the Seventh Circuit held that a motion to dismiss should be treated as a motion on the merits pursuant to Rule 12(b)(6)—and then converted to a motion

---

[5] There are certainly situations in which standing arguments do not implicate an element of the cause of action. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (finding no standing because plaintiff could not satisfy "injury in fact" even though relevant statute did not require injury, but rather provided for statutory damages); *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Each of the Seventh Circuit cases cited by the Moving Defendants in support of their position that "standing analysis is distinct from and independent of merits analysis, and plaintiffs must prove standing by a preponderance of the evidence, whenever challenged or questionable, throughout the life of a case" involved one of those types of situations. *See* [Dkt. 178 at 7, 9] (citing *Bazile v. Finance Sys of Green Bay, Inc.*, 983 F.3d 274 (7th Cir. 2020); *Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622 (7th Cir. 2017); *Kathrein v. City of Evanston, Ill.*, 636 F.3d 906, 914 (7th Cir. 2011); *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996)).

for summary judgment if appropriate—rather than a jurisdictional motion pursuant to Rule 12(b)(1). *Id.* at 279-80 (citing *Bell v. Hood,* 327 U.S. 678, 682 (1946)).[6] The court noted that

> this method of treating indirect attacks on the merits as 12(b)(6) motions rather than 12(b)(1) motions properly provides more protection to the plaintiff, since under 12(b)(1) the court may determine disputed facts which determine jurisdiction, whereas under 12(b)(6) the court must treat plaintiff's allegations as true, and in addition under Rule 56 must determine that no genuine issue of material fact exists. *Williamson* [*v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)]. This higher level of protection for plaintiff is warranted since in this situation he is in reality facing a challenge to the merits of his claim. *Id.* at 415.

*Malak*, 784 F.2d at 280; *see also Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1144 (9th Cir. 2024) ("[W]hen a court is faced with a factual attack on standing pursuant to Rule 12(b)(1), the court 'must leave the resolution of material factual disputes to the trier of fact when the issue of [standing] is intertwined with an element of the merits of the plaintiff's claim.") (citation omitted); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) ("[A] court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.") (citations omitted); *PDVSA US Litig. Tr. v. Lukoil Pan Americas, LLC*, 991 F.3d 1187, 1192 (11th Cir. 2021) ("When the jurisdictional basis of a claim is intertwined with the merits, the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss

---

[6] *Malak* recognized the exception set forth in *Bell* for cases in which the claim "'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" *Malak*, 784 F.2d at 279 (quoting *Bell,* 327 U.S. 678 at 682-83). Under *Bell*, when that exception applies, it is appropriate to decide the standing issue as a jurisdictional challenge rather than a merits challenge, even if the basis for jurisdiction is an element of the cause of action. *Id.*

which asserts a factual attack on subject-matter jurisdiction."). This approach is consistent with the Supreme Court's holding in *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), that "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." Conversely, the approach urged by the Moving Defendants would be contrary to *Lujan,* because it would require Plaintiffs to prove facts beyond a reasonable doubt at the pleading stage.

The Undersigned finds *Malak* to be directly on point. Because Plaintiffs' FLSA claims against the Patels do not "'clearly appear[] to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . wholly insubstantial and frivolous,'" *Malak*, 784 F.2d at 279 (quoting *Bell*, 327 U.S. 678 at 682-83), the proper course of action is to treat the issue of whether Chintu Patel or Jigna Patel was an employer of Plaintiffs under the FLSA as a merits issue, not a jurisdictional issue. Accordingly, the Undersigned **recommends** that the motion to dismiss as to the claims against the Patels be treated as a motion pursuant to Rule 12(b)(6). Because the motion relies on matters outside of the pleadings, the motion must be converted to a motion for summary judgment pursuant to Rule 12(d). The Undersigned **further recommends** that the motion for summary judgment be **DENIED** pursuant to Rule 56(d)(1) as requested by Plaintiffs in their brief, [Dkt. 175 at 25], because Plaintiffs have sufficiently demonstrated by affidavits submitted in opposition to the instant motion that they are entitled to conduct additional discovery before they are required to respond to the motion for summary judgment.

### C. Standing as to State Law Claims Against Chintu Patel and Jigna Patel

With regard to the claims against Chintu Patel under the Indiana Wage Payment Statute, the Moving Defendants primarily assert their factual challenge to standing, which fails at this stage of the case for the reasons discussed above. However, the Moving Defendants, relying on *Duvall v. Heart of CarDon, LLC*, 611 F.Supp.3d 607 (S.D. Ind. 2020), and *Poff v. Quick Pick, LLC*, 2018 WL 6061569 (S.D. Ind. Nov. 20, 2018), assert that "under Indiana law, there must be an allegation . . . that the parties intended an employment relationship to exist." [Dkt. 159 at 20.] Thus, they argue that "Plaintiffs have not plead . . . any common law employment relationship with" Chintu Patel because Plaintiffs do not allege that Plaintiffs and Chintu Patel "intended an employment relationship to exist" between them. *Id.* Neither of the cited cases supports the Moving Defendants' argument that the failure to plead (or prove, for that matter), the intent to create an employment relationship is fatal to a claim under the Indiana Wage Payment Statute. It is not. Rather, the intent to create an employment relationship is simply one factor to be considered in determining whether an employment relationship exists. *See Black v. Emp. Sols., Inc.*, 725 N.E.2d 138, 142-43 (Ind. Ct. App. 2000) (cited in both *Duvall*, 611 F.Supp.3d at 630 and *Poff*, 2018 WL 6061569, at *3). *Black* makes this very clear:

> [T]he intent of the parties is not determinative in a statutory wage claim. The Wage Payment Statute does not suggest that intent is even a primary consideration that should be given greater weight than the hiring party's ability to control the hired party. An employer either controls or has the right to control the conduct of his agent. The right of control is determined by consideration of the following factors: the right to discharge, mode of payment, supplying tools or equipment, belief by the parties in the existence of an employer-employee relationship, control over the means used in the results reached, length of employment and establishment of the work boundaries. In order to support a determination that an employer-employee relationship exists between the parties, it is not necessary that all seven factors be present. Instead, if a majority of the factors is present, an employer-employee relationship exists.

*Black*, 725 N.E.2d at 143 (citations omitted).  Accordingly, the Moving Defendants' facial challenge to the Indiana Wage Payment Statute claims against Chintu Patel fails and the Undersigned **recommends** that the motion to dismiss be **DENIED** with regard to those claims.

However, with regard to Jigna Patel, the Moving Defendants correctly note that the Third Amended Complaint does not allege sufficient facts to support a finding that she had the requisite right to control the Plaintiffs.  Rather, the Third Amended Complaint alleges only that she "assists in managing" each of the Restaurants.  In their response to the instant motion, Plaintiffs do not argue that this allegation is sufficient to survive a facial challenge; rather, they argue only that they have adequately pled that **Chintu** Patel is an employer under Indiana law.  *See* [Dkt. 175 at 26-27].  Accordingly, the Undersigned **recommends** that the motion to dismiss be **GRANTED** with regard to the Indiana Wage Payment Statute claims against Jigna Patel and that those claims be **DISMISSED** without prejudice for lack of subject matter jurisdiction.

### III.  CONCLUSION

For the reasons set forth above, the Undersigned **recommends** that the Moving Defendants' Renewed Motion to Dismiss, [Dkt. 158], be **GRANTED** as to all claims against the Operating Entities and the Managing Entities and the Indiana Wage Payment Statute claims against Jigna Patel, and that those claims be **dismissed without prejudice** for lack of subject matter jurisdiction.  The Undersigned further **recommends** that the motion be **DENIED** as to all claims against Chintu Patel and the FLSA claim against Jigna Patel.

For the benefit of the Clerk, if this Report and Recommendation is adopted, the following Defendants should be terminated on the docket:  Jay Ravi Randal 2, LLC; Subin 5, LLC; S&S Gas Station CSGS, LLC; Subin 6, LLC; Subin 10, LLC; Subin 12, LLC; Subin 13, LLC; Subin 14, LLC; Subin 15, LLC; Subin 16, LLC; Subin 17, LLC; Subin 18, LLC; Subin 19, LLC; Subin

20, LLC; Subin 21, LLC; Subin 22, LLC; Subin 23, LLC; Subin 24, LLC; Subin 25, LLC; Subin 29, LLC; Subin 30, LLC; Subin 33, LLC; Subin 35, LLC; Subin 37, LLC; Subin 38, LLC; Subin 39, LLC; Subin 40, LLC; Subin 41, LLC; and Jay Ravi Randal 1, LLC; SUBINKY, LLC; and JBMEnterprise, LLC.

Any objections to this Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated: 10 JUL 2025

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.